# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-0363


**STATE OF LOUISIANA**

**VERSUS**

**HERBERT DAVENPORT, JR.**


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF VERMILION, NO. 2003 T 1768,
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of Chief Judge Ulysses Gene Thibodeaux and Judges Jimmie C. Peters and J. David Painter.

**CONVICTION AFFIRMED, SENTENCE VACATED, AND THE MATTER REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.**

**Thibodeaux, Chief Judge, dissents and assigns written reasons.**

**Richard Putnam, III**
**Assistant District Attorney**
**Post Office Box 175**
**Abbeville, LA 70511-0175**
**(337) 898-0103**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**James Beal**
**Louisiana Appellate Project**
**Post Office Box 307**
**Jonesboro, LA 71251-0307**
**(318) 259-2391**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Herbert Davenport, Jr.**

PETERS, J.

A jury convicted the defendant, Herbert Davenport, Jr., of hit and run driving, a violation of La.R.S. 14:100. Thereafter, the trial court sentenced him to serve seven and one-half years at hard labor. The defendant appeals both his conviction and sentence, asserting two assignments of error. For the following reasons, we affirm the defendant's conviction, but vacate his sentence and remand the matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

At approximately 2:00 a.m. on Saturday, September 27, 2003, the defendant was driving a vehicle south on U.S. Highway 167 (U.S. 167) in or near Maurice, Vermilion Parish, Louisiana. Ross Plowden accompanied the defendant and was sitting in the front passenger seat. The two men had been together since early Friday afternoon and were returning from a trip to Lafayette, Louisiana. As the two men traveled the highway, the defendant accidentally struck and killed a pedestrian, Cliff R. Gaspard.[1] It is this accident that gave rise to the criminal charge now before us.

At the point where the defendant struck Gaspard, U.S. 167 is a four-lane highway with the north and south travel lanes separated by a median. Visibility on the early morning hours of September 27, 2003, was impaired by ground fog, and the accident occurred when the defendant, who was proceeding south in the outside lane of U.S. 167, swerved to the inside lane to avoid a collision with another vehicle which had turned in front of him. When the defendant entered the inside lane, he immediately encountered Gaspard walking in the middle of the lane. He swerved back toward the outside lane to avoid hitting Gaspard, but, for some unexplained

---

[1]The defendant and Plowden were the only two witnesses to the accident. The evidence with regard to the particulars of the accident was supplied at trial through the testimony of Plowden and pretrial statements of the defendant.

reason, Gaspard turned in the direction of the swerving vehicle and was struck. The defendant regained control of his vehicle and stopped on the side of U.S. 167, and he and Plowden began a futile search for the victim.[2] After failing to find the victim, the two men abandoned the search and left the scene of the accident without reporting the incident to any law enforcement authority.

At approximately 6:45 a.m. that same morning, Dallas E. Landry discovered Gaspard's body in the highway median approximately thirteen feet from the edge of the highway and immediately reported his discovery to law enforcement officials. That evening, after seeing a television report concerning the accident, the defendant turned himself in to law enforcement authorities and subsequently gave an oral statement concerning his involvement in the incident.

The State of Louisiana (state) charged the defendant by bill of information with a violation of La.R.S. 14:100. After a two-day trial, which began on July 12, 2005, a jury convicted the defendant of the charge. The trial court then ordered the preparation of a presentence investigation report and set sentencing for November 9, 2005. On that date, the trial court sentenced the defendant to serve seven and one-half years at hard labor. After the trial court rejected his December 6, 2005 motion to reconsider his sentence, the defendant perfected this appeal, asserting two assignments of error.

**OPINION**

In his first assignment of error, the defendant asserts that the evidence was not sufficient to convict him of hit and run driving. In considering this assignment of error, we first note that the law is well settled concerning the appellate court's role

---

[2]The testimony of Plowden conflicts with other evidence concerning the defendant's role in the search for the victim, but that conflict is not dispositive of the issues before us.

in considering an insufficient evidence argument. The critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983).

Louisiana Revised Statutes 14:100 defines the offense of hit and run driving and provides in pertinent part as follows:

> A. Hit and run driving is the intentional failure of the driver of a vehicle involved in or causing any accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid.
>
> B. For the purpose of this Section:
>
> (1) "To give his identity", means that the driver of any vehicle involved in any accident shall give his name, address, and the license number of his vehicle, or shall report the accident to the police.
>
> (2) "Serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain, or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
>
> . . . .
>
> (4) "Accident" means an incident or event resulting in damage to property or injury to person.

Thus, the fact that an individual is involved in an accident does not give rise to the criminal charge. Rather, criminal culpability is based on the individual's action or inaction after the accident. After being involved in an accident, an individual must do three things to avoid criminal liability: He must stop his vehicle at the scene of the accident, give his identity, *and* render reasonable aid. If he intentionally fails to perform these three actions, he may be convicted of the offense of hit and run driving. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So.2d 7.

3

On appeal, the defendant asserts that these three elements are separate and distinct and that the state established only one of the three, i.e., his failure to report the accident to the police.[3] We disagree. While the elements are listed separately, they clearly overlap in their application.

The evidence establishes beyond a reasonable doubt that the defendant did stop his vehicle at the scene of the accident after he struck the victim and that he initially searched for the victim,[4] but then left the scene. The evidence also establishes beyond a reasonable doubt that the defendant failed to report the accident to the police, either at the accident scene or after he left the scene,[5] and that he provided no aid to the victim other than the futile search effort.

We conclude, as apparently did the jury, that the temporary stop was not sufficient to satisfy the obligation arising under La.R.S. 14:100. That statute sets no time limit for the required stop, and merely stopping at the scene without fulfilling the other two obligations, i.e., providing identity and rendering reasonable aid, is no different than not stopping at all. We also find no merit in the argument that the search effort was sufficient to satisfy the reasonable aid element. By not reporting the accident, the defendant effectively prevented the victim from receiving reasonable aid.

---

[3]In this case, because the victim was not initially located, La.R.S. 14:100(B)(1) required that the defendant report the accident to the police.

[4]The defendant's prior statement to the investigating officers was to the effect that he and Plowden searched the highway for approximately thirty minutes on both sides of the road, but did not discover the victim's body. Plowden testified that the search lasted about twenty minutes, and, while his testimony was ambiguous concerning the defendant's involvement in the search, he acknowledged on cross-examination that the defendant participated in the search.

[5]Plowden testified that he and the defendant attempted to flag down a passing police car while at the scene of the accident.

In viewing the evidence in the light most favorable to the state, we conclude that any rational trier of fact could have found that the state established the essential elements of the offense beyond a reasonable doubt. Thus, we find no merit in the defendant's first assignment of error.

In his other assignment of error, the defendant asserts that the sentence imposed by the trial court is excessive. The incarceration sentence for a defendant convicted of hit and run driving is zero to ten years with or without hard labor. La.R.S. 14:100(C)(b)(2). Thus, the defendant's seven and one-half year hard labor sentence is within the statutory sentencing range. However, we do not reach the excessiveness issue because we must vacate the sentence because the trial court based the sentence in part on improper considerations.

At the sentencing proceedings, the trial court gave extensive oral reasons for the sentence imposed. As mitigating factors, the trial court noted that the defendant is a first felony offender with no prior criminal history and that he did surrender himself to law enforcement after he saw the television broadcast. Past that point, the trial court found no other factor mitigating in favor of the defendant. The trial court also noted the impact the accident had on the victim's family and acknowledged that the family requested imposition of the maximum sentence. To that extent, we find no error in the trial court's conclusions.

The difficulty arises in the trial court's expressed disbelief in the state's evidence with regard to the defendant and Plowden stopping and searching at the scene. Rather than accepting the state's uncontradicted version of the surrounding circumstances, the trial court concluded that the two men did not stop and search for the victim, because, if they had, they would have found him. Thus, in sentencing the

5

defendant, the trial court improperly penalized the defendant for inaction not supported by the evidentiary record.

Additionally, the trial court also stated that it based its sentence partly on what it concluded was the defendant's obvious lack of remorse. This conclusion was apparently based on comments made by the defendant in the presentence investigation report, the argument of his counsel at the sentencing hearing, and the fact that Plowden entered a guilty plea to accessory after the fact for his involvement in the offense.

We make no comment concerning the contents of the presentence investigation report. However, the statements of the defendant's attorney relate to an attempt to introduce evidence of the victim's condition immediately prior to the accident as well as his prior criminal history. These offerings were rejected as being irrelevant. The trial court erred in concluding that the trial strategy of the defendant's attorney equated to a lack of remorse on the part of the defendant.

Additionally, regarding Plowden's plea,[6] the trial court stated that this act "apparently [showed] some remorse and some acceptance rather than denial of his guilt," as opposed to the defendant's decision to go to trial. One cannot necessarily equate Plowden's plea bargain as being an indication of remorse. Plowden's situation was different than that of the defendant. Importantly, while the defendant had a spotless criminal record, Plowden's was extensive.[7] Thus, the incentive for entering into a plea agreement with the state and testifying against the defendant was

---

[6]As a result of a plea agreement, Plowden received five years at hard labor for his involvement in the offense.

[7]Plowden's criminal record included, among other charges, unauthorized entry of an inhabited dwelling, simple criminal damage to property, possession of crack cocaine, possession of drug paraphernalia, and hit and run of a police officer. He was on probation at the time of the accident and committed several offenses after that time.

significant, and the trial court erred in relying on Plowden's plea agreement as a basis for concluding that the defendant showed a lack of remorse. Essentially, the trial court punished the defendant for maintaining his innocence and requiring the state to prove his guilt. This was improper.

While the trial court acknowledged that the defendant was a candidate for probation, the trial court nevertheless sentenced him to a hard labor sentence, primarily based on its disbelief in the uncontradicted version of the surrounding circumstances, its finding of lack of remorse on the part of the defendant, the fact that Plowden had been sentenced to five years at hard labor, and the feelings of the victim's family. When the improper considerations are removed from the trial court's reasons for sentencing, we are left with only the recognized mitigating factors and the comments from the victim's family. Because the trial court was improperly influenced in sentencing the defendant by its conclusions with regard to the evidence presented as well as the remorse issue, we find it necessary to vacate the sentence and remand the matter to the trial court to resentence the defendant without consideration of those factors as they were originally presented.

### DISPOSITION

For the foregoing reasons, we affirm the defendant's conviction, but vacate the sentence and remand this matter to the trial court for further proceedings.

**CONVICTION AFFIRMED, SENTENCE VACATED, AND THE MATTER REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.**

7

STATE OF LOUISIANA

VERSUS

HERBERT DAVENPORT, JR.


THIBODEAUX, Chief Judge, dissenting.


The majority misconstrues the clear language of La.R.S. 14:100. In doing so, it imposes conditions on a defendant not contemplated by the statute. The application of impermissible statutory construction improperly upholds the conviction of this Defendant.

Louisiana Revised Statutes 14:100 is written in the conjunctive. It requires: (1) stopping one's vehicle at the scene; (2) giving one's identity; **and**, (3) rendering reasonable aid. The majority recognizes these three factors and further recognizes that if one fails to perform these *three* actions, he may be convicted of the offense of hit and run driving, citing *State v. Williams*, 03-3514 (La. 12/13/04), 893 So.2d 7. However, the majority reasons that these elements, although in the conjunctive, are not separate and distinct. Rather, the three elements must be read together such that a defendant must simultaneously do all three things. That is, when one stops his vehicle pursuant to La.R.S. 14:100(A), he must simultaneously provide his identity and render reasonable aid. The failure to do so, the majority reasons, is tantamount to not stopping at all. I disagree.

The rendering of reasonable aid presupposes the existence of someone to whom aid should be provided. In this case, the testimony indisputably shows that an attempt was made to find the victim and to presumably provide assistance. The Defendant's and his friend's attempt to find the victim was unavailing. Consequently, they left the scene. The Defendant then turned himself into law enforcement upon hearing about this accident on a local television broadcast.

*Williams* emphasizes that it was "undisputed that defendant did not stop *at* the scene of the accident." *Id.* at 13. It is significant that the supreme court chose to emphasize the word "at" in finding that element number one had been proven. Here, there is no doubt the Defendant stopped *at* the scene of the accident and attempted to render aid. The State failed in its burden, in my view, to establish that the Defendant failed to stop at the scene of this accident.

It is axiomatic that criminal laws are to be strictly construed and with lenity in favor of an accused and against the State. *State v. Carr*, 99-2209 (La. 5/26/00), 761 So.2d 1271. The majority, in upholding this conviction, fails to honor this elementary principle of criminal law.

For the foregoing reasons, I respectfully dissent.